IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCOTT B. SULLIVAN,<br><br>      **Plaintiff,**<br><br>      v.<br><br>UNIVERSITY OF KANSAS HOSPITAL<br>AUTHORITY, et al.,<br><br>      **Defendants.** | Case No. 2:19-CV-2078-JAR-TJJ |

## MEMORANDUM AND ORDER

Plaintiff Scott B. Sullivan filed this *pro se* action against University of Kansas Hospital Authority, University of Kansas Physicians, Dr. Judson Bertsch, M.D., Dr. Larry Cordell, M.D., Dr. Phillip Hylton, M.D., Dr. Tiffany Williams, M.D., Dr. Mohsen Tahani, M.D., Mission Family Health Care, Dr. Bradley S. Jackson, M.D., Dr. Mark O. Scott, D.O., Dr. Brandon Welsh, M.D., Dr. John Leever, M.D., Neurosurgery of South Kansas City, Dr. John Clough, M.D., Ellen Kay Carpenter, Bob Page, and Dr. Keven Brown, M.D. (collectively, "Defendants"). Plaintiff also brings this action against the United States Department of Justice ("DOJ"), asking that the Court compel the DOJ to investigate his claims of discrimination pursuant to a writ of mandamus.

This matter is before the Court on Defendants' Motions to Dismiss Plaintiff's Amended Complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Docs. 62, 64, 66, 92, 102). Plaintiff's Amended Complaint (Doc. 52) spans 128 pages and includes numerous allegations. Highly summarized, Plaintiff alleges medical malpractice and discriminatory business practices under the Americans with Disabilities Act ("ADA") and Rehabilitation Act, racketeering, obstruction of justice, discriminatory animus,

and several state law claims including violations of the Kansas Consumer Protection Act, defamation, negligent/intentional infliction of emotional distress, taking, detaining or injuring personal property, conspiracy, and tortious interference with a contract.

Plaintiff proceeds *in forma pauperis* and therefore, under 28 U.S.C. § 1915(e)(2), "the court shall dismiss the case at *any time* if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." When evaluating a Complaint under § 1915(e)(2), the Court applies the same standard of review as under Fed. R. Civ. P. 12(b)(6).[1] The Court finds that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted as to any named Defendant, and accordingly, to the extent this matter is not yet fully briefed or Defendants have not filed a Motion to Dismiss, the Court may proceed. For the reasons stated below, Defendants' Motions to Dismiss are **granted**. This case is dismissed in its entirety.

I. Background

The Court derives the following relevant facts from Plaintiff's 128-page Amended Complaint and construes these facts in the light most favorable to Plaintiff.

Plaintiff suffered from a work-related injury on January 9, 2012.[2] Plaintiff suffers from Tarlov Cyst Disease, a congenital connective tissue disorder that affects the central and peripheral nervous systems. Plaintiff suffers from severe symptoms including chronic back pain and neuropathy.

Plaintiff visited the KU emergency room on April 8, 2014. Plaintiff was taken to "Station 19" where he explained his symptoms without any privacy.[3] Dr. Jackson ordered a pain-relieving patch, which was applied. A few hours later, Dr. Scott ordered an MRI. No

---

[1] *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007).

[2] Doc. 52 ¶128.

[3] *Id*. ¶140.

mention was made of the Tarlov Cysts. Plaintiff was referred to Dr. Tiffany Williams, who merely asked Plaintiff standard questions and refused to perform any substantive evaluation. Plaintiff was then referred to Dr. Phillip Hylton; Dr. Hylton told Plaintiff within 45 seconds that there was nothing he could do, without any questions or examination.[4] Plaintiff met with Dr. Hylton again on October 8, 2014, but Dr. Hylton refused to perform a worker's compensation evaluation.[5]

On March 10, 2015, Plaintiff had an appointment with Dr. Larry Cordell. Dr. Cordell ordered x-rays in a standing position. Plaintiff was in such pain that he fell to the ground. After a series of physical manipulation tests, Dr. Cordell concluded that Plaintiff's pain was "out of proportion" to the x-ray findings.[6]

Medical professionals at Neurosurgery of South Kansas City told Plaintiff that no Tarlov Cysts were found on MRIs conducted in May 2016 and February 2017. Plaintiff sought emergency medical care at the University of Kansas on September 9, 2017 but was "neglected abusively."[7]

Plaintiff asserts that his diagnosis has been actively concealed from him by all his treating physicians, and that numerous physicians have rendered "intentionally negligent" and "incorrect" medical care.[8]

Plaintiff alleges that his condition was not treated because of a

> wide-spread lack of knowledge of Tarlov Cyst Disease; the wide-spread unavailability within the private sector of specialized care for persons with Tarlov Cyst Disease . . . disenfranchisement due

---

[4] *Id*. ¶175.

[5] *Id*. ¶195.

[6] *Id*. ¶203.

[7] *Id*. ¶104.

[8] *Id*. ¶413.

> to misdiagnosis from disability benefits, Medicaid benefits (KanCare), and subsidized health insurance; and the lack [of] proper training and continuing education regarding Tarlov Cyst Disease which is necessary to address the medical and psychosocial needs of victims of this disease.[9]

## II. Legal Standard

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[10] A court lacking jurisdiction must dismiss the claim, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[11] The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[12] Mere conclusory allegations of jurisdiction are not enough.[13]

Plaintiff bears the burden of establishing that federal jurisdiction exists.[14] Plaintiff asserts that the Court has federal question jurisdiction pursuant the ADA, RICO Act, Civil Rights Act, constitutional question, action to compel an officer of the United States to perform his duty, and supplemental jurisdiction.[15] Accordingly, the Court considers whether Plaintiff has established federal jurisdiction under federal question jurisdiction.

---

[9] *Id.* ¶243.

[10] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal citations omitted)).

[11] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[12] *Montoya*, 296 F.3d at 955.

[13] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[14] *McBride v. Doe*, 71 F. App'x 788, 789–90 (10th Cir. 2003) (holding a *pro se* plaintiff attempting to assert diversity jurisdiction bears the burden of establishing federal jurisdiction if plaintiff wishes to invoke such federal jurisdiction, despite the plaintiff's *pro se* status).

[15] Doc. 52 ¶25.

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a claim where the plaintiff has failed "to state a claim upon which relief can be granted." To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] When evaluating a 12(b)(6) motion to dismiss, the court must accept all facts well-pleaded by the non-moving party as true and must grant all reasonable inferences in favor of the non-moving party.[18] Legal conclusions couched as factual allegations are not accepted as facts by the court.[19] For the court to deny this motion, a plaintiff must state a plausible claim, which requires "sufficient factual allegations to 'raise a right to relief above the speculative level.'"[20]

Defendants move for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Where "the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56."[21] The court should do so by converting the Rule 12(b)(1) motion for lack of jurisdiction to a 12(b)(6) motion to dismiss.[22] "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"[23] Here, the issue of federal

---

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[19] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[20] *Id.*

[21] *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999); *see also Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).

[22] *Franklin Sav. Corp.*, 180 F.3d at 1129.

[23] *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002)).

question jurisdiction is intertwined with the merits of Plaintiff's claims. Accordingly, the Court will convert the 12(b)(1) Motion to a 12(b)(6) Motion to Dismiss. The Court will, pursuant to Fed. R. Civ. P. 12 (b)(6), consider whether Plaintiff has stated a federal claim upon which relief may be granted.

Finally, because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis. The court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[24] However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[25] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[26]

## III. Discussion

### A. Federal Claims

As an initial matter, to the extent Plaintiff asserts claims on behalf of other allegedly similarly situated individuals with Tarlov Cyst Disease, the Court finds that he does not have standing to do so.[27] Accordingly, the Court only considers Plaintiff's individual claims.

#### 1. ADA and Rehabilitation Act

Plaintiff alleges disability discrimination under both the ADA and Rehabilitation Act. The Rehabilitation Act prohibits programs receiving federal financial assistance from

---

[24] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[25] *Id*.

[26] *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[27] *See RMA Ventures Cal. v. SunAmerica Life Ins.*, 576 F.3d 1070, 1073 (10th Cir. 2009) ("A well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others.").

discriminating solely on the basis of disability.[28] For purposes of stating a claim, "[c]ase law interpret the Rehabilitation Act and the ADA as interchangeable."[29] Accordingly the Court considers whether Plaintiff has stated a claim under the ADA or Rehabilitation Act together.

Plaintiff asserts a claim for disability discrimination and medical malpractice under the ADA.[30] To establish a prima facie case under the ADA, a "plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."[31] To establish the first element, a plaintiff is obligated to show that he was "otherwise qualified" for the benefits he sought.[32] The Tenth Circuit has held that "the term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.'"[33] In *Fitzgerald v. Corr. Corp. of Am.*, the plaintiff alleged the doctors and jail staff refused to treat him for his diabetes because he was disabled with diabetes.[34] The court held the plaintiff was not "otherwise qualified" for treatment in the absence of his disability.[35] The court explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'"[36] "These

---

[28] 29 U.S.C. 794(a).

[29] *Faroh v. Sedgwick Cty., Kansas*, No. 98-1138-JAR, 2002 WL 1627701, at *5 (D. Kan. July 12, 2002).

[30] As discussed above, the Court construes Plaintiff's claims under Title II of the ADA. *See generally* 42 U.S.C. § 12132.

[31] *Robertson v. Las Animas Cty. Sheriff's Dep't,* 500 F.3d 1185, 1193 (10th Cir. 2007); *J. V. ex rel. C. V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

[32] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (citing *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)).

[33] *Id.* (emphasis added).

[34] 403 F.3d at 1144.

[35] *Id.*

[36] *Id.* (emphasis added) (quoting *United States v. Univ. Hosp.,* 729 F.2d 144, 157 (2nd Cir. 1984)).

are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA."[37]

Plaintiff also alleges a violation of "Section 12210."[38] 42 U.S.C. § 12210(c) states, "an individual shall not be denied health services, or services, provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs *if the individual is otherwise entitled to such services*." As discussed above, Plaintiff has failed to show that he was otherwise entitled to any medical services to treat Tarlov Cyst Disease.

Finally, Plaintiff asserts that Defendants committed medical malpractice on numerous occasions between 2014 and 2017 in the way they treated Plaintiff, namely by discriminatorily failing to timely diagnose or treat him for Tarlov Cyst Disease. Plaintiff alleges that Defendants refused to diagnose him with, or treat him for, Tarlov Cyst Disease because he has Tarlov Cyst Disease.[39] Plaintiff is not "otherwise qualified" for treatment of Tarlov Cyst Disease in the absence of his alleged disability, Tarlov Cyst Disease. Moreover, to the extent Plaintiff asserts a claim for medical malpractice or negligence under the ADA or Rehabilitation Act, it is well settled law in the Tenth Circuit that the ADA does not provide a private right of action for medical malpractice.[40] Accordingly, Plaintiff fails to state a prima facie case under the ADA or Rehabilitation Act because he fails to plausibly plead that he was "otherwise qualified" for the benefits he sought.

---

[37] *Id.*

[38] Doc. 52 ¶333.

[39] *Id.* ¶321 ("Because I suffer this rare disease which The University of Kansas physicians, radiologist, gynecologists, emergency room physicians, and general practitioners refuse to acknowledge; I have never received the equal access to medical care of the equal benefits of medical care that a person with any other qualifying disease would receive.").

[40] *See Fitzgerald*, 403 F.3d at 1144; *see also Anderson v. Colorado*, 848 F. Supp. 2d 1291, 1300 (D. Colo. 2012).

## 2. Section 1981 and Civil Rights Act

Next, Plaintiff alleges discriminatory animus under "42 U.S.C. § 1981" and "the Civil Rights Acts."[41] Section 1981 protects the right of all persons to "make and enforce contracts" which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[42] No "discriminatory animus" cause of action exists under this statute. Similarly, no "discriminatory animus" cause of action exists under "the Civil Rights Acts."[43] Black's Law Dictionary defines animus as "[a] prejudicial disposition toward a discernible, usually constitutionally protected, group of persons" and instructs that "[a] class-based animus is an essential element of a civil-rights conspiracy case."[44] In other words, "discriminatory animus" may be an element of a cause of action but there is no such cause of action itself.

Plaintiff asserts no specific factual allegations of "discriminatory animus" to support a § 1981 claim. The Tenth Circuit has held "a § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities."[45] Plaintiff asserts no particular contract loss or any particular benefit or privilege he was denied. Rather, he asserts generally that he is subject to "abuse, neglect, and exploitation" from others, including doctors, because he has Tarlov Cyst Disease.[46] Plaintiff also asserts the "social animus" is "cultural" and should therefore be

---

[41] Doc. 52 at 114.

[42] 42 U.S.C. § 1981(b).

[43] *See generally* 42 U.S.C. §§ 1981, 2000.

[44] ANIMUS, BLACK'S LAW DICTIONARY (11th ed. 2019).

[45] *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1195 (10th Cir. 2002) (quoting *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001)).

[46] Doc. 52 ¶528

protected under the Civil Rights Act.[47]  However, the Tenth Circuit has held that § 1981 does not extend to disability discrimination.[48]  Accordingly, Plaintiff has failed to state a "discriminatory animus" civil rights claim against any Defendant.

### 3. RICO

Next, Plaintiff alleges "racketeering activity" through "enterprises and enterprises of fact."[49]  To plausibly plead a RICO claim, Plaintiff must offer factual support to establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[50]

Plaintiff alleges "wide spread racketeering engaged in by health care organization, and with cooperation between individual health care providers in enterprises of fact."[51]  Plaintiff also makes the conclusory statement "abuse, neglect, exploitation, insurance fraud, medical malpractice, assault, vandalism, threats of violence, threats of death, witness intimidation, racketing, retaliation, litigation abuse, and invidious discrimination . . [were] engaged in by enterprises and enterprises of fact form the factual foundation for findings of Racketeering activity."[52]  Plaintiff's conclusory statements do not provide any factual basis to support a plausible claim of a pattern of criminal racketeering activity under the statute,[53] nor do they sufficiently allege an enterprise under federal law.[54]

---

[47] *Id*. ¶553.

[48] *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 (10th Cir. 1997).

[49] Doc. 52 ¶58. See 18 U.S.C. § 1962.

[50] *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).

[51] *Id*. ¶115.

[52] *Id*. ¶58.

[53] *See* 18 U.S.C. § 1961 (defining racketeering activity).

[54] *See Boyle v. United States*, 556 U.S. 938, 946 (2009) ("From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. As we succinctly put it in *Turkette,* an association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct.") (internal citation removed).

While the Court liberally construes Plaintiff's *pro se* Amended Complaint, it will not add factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[55]  Plaintiff has failed to state a RICO claim upon which relief may be granted based on the limited facts pled in his Amended Complaint.

### 4.   Obstruction of Justice

Plaintiff alleges obstruction of justice violations under the ADA, Rehabilitation Act, RICO, and 42 U.S.C. 21 §§ 1981–1988.  At various places in his Amended Complaint, Plaintiff alleges, "[t]he University of Kansas medical center also played a significant role in obstructing my personal access to medical care," "a citizen's right to seek relief for Federal violations and supplemental jurisdiction over state violations is wrongfully obstructed by The University of Kansas' bad faith claims of sovereign immunity;" and "Dr. Larry Cordell [] provided abusive and negligent services . . . to intentionally obstruct me from having access to healthcare via workers compensation benefits."[56]  These vague and conclusory allegations fail to plead a claim for relief.

In addition, "obstruction of justice" is a criminal statute and therefore creates no private right of action.[57]  Further, to the extent Plaintiff seeks to bring an obstruction of justice claim under the ADA, Rehabilitation Act, or § 1981, no such cause of action exists under these statutes.  Moreover, regardless of the statute the claim is brought under, Plaintiff's conclusory allegations fail to state a claim for relief.   Accordingly, Plaintiff has failed to state an obstruction of justice claim upon which relief may be granted based on the limited facts pled in his Amended Complaint.

---

[55] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[56] *Id.* ¶¶ 245, 386, 297.

[57] 18 U.S.C. §§ 1501-1521.

### 5. Specific Relief under 28 U.S.C. § 1361

Plaintiff requests this Court to "compel law enforcement intervention and investigative resources to preserve the interests of the United States and all protected citizens."[58] 28 U.S.C. § 1361 gives district courts original jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."[59] To obtain mandamus relief, the plaintiff must show that he has a clear right to the relief sought, the defendant has a plainly defined and peremptory duty to perform the act in question, and no other adequate remedy is available.[60] Courts have no authority under the mandamus statute to order a government official to perform a discretionary duty.[61] The Attorney General possesses broad discretion whether to investigate or prosecute claims on behalf of the United States.[62] Accordingly, Plaintiff has not and cannot establish a preemptory duty owed by the DOJ, and Plaintiff's motion to compel the DOJ must be dismissed.

### B. State Law Claims

Plaintiff's remaining claims are brought under Kansas state law. The Court may decline to exercise supplemental jurisdiction if only issues of state law remain after the court has dismissed all federal claims.[63] Supplemental jurisdiction "is exercised on a discretionary basis,

---

[58] Doc. 52 ¶25

[59] *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam); *West v. Spellings*, 480 F. Supp. 2d 213, 217 (D. D.C. 2007).

[60] *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

[61] *See West*, 480 F. Supp. 2d at 217.

[62] *See, e.g.*, *Daiflon*, 449 U.S. at 36; *United States v. Andersen*, 940 F.2d 593, 596 (10th Cir. 1991).

[63] 28 U.S.C. § 1367(c)(3).

keeping in mind considerations of judicial economy, convenience and fairness to the litigants."[64] Ordinarily, if no federal claims remain before trial, the court should decline to exercise supplemental jurisdiction over the remaining state law claims.[65]

As discussed above, the Court has dismissed all federal claims. This case is at the pleading stage, and no discovery has occurred. Thus, the Court exercises its discretion and declines to assert supplemental jurisdiction over Plaintiff's remaining state law claims.[66]

### C. Leave to Amend

Finally, Plaintiff, in his Responses, asks the Court for leave to amend in the event of insufficiencies in the pleading.[67] Under Fed. R. Civ. P. 15(a)(2), the court "should freely give leave when justice so requires." Under the present circumstances, the Court finds that justice does not so require. Plaintiff already filed a 128-page Amended Complaint, which added no relevant factual basis for the claims before the Court.[68] Based on the numerous pleadings before this Court, the Court finds that leave to amend would be futile and create undue prejudice for the opposing parties.[69]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motions to Dismiss (Docs. 62, 64, 66, 92, 102) are **granted**. This case is dismissed in its entirety.

**IT IS SO ORDERED.**

Dated: August 26, 2019

---

[64] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997); *see Brooks v. Gaenzle*, 614 F.3d 1213, 1229–30 (10th Cir. 2010).

[65] *Id.* (citations omitted).

[66] Accordingly, it is unnecessary for the Court to consider Defendant KU Hospital's argument that sovereign immunity bars Plaintiff's state law claims.

[67] Docs. 83 at 16, 84 at 26, 85 at 3.

[68] *Compare* Doc. 1 *with* Doc. 52.

[69] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

                                          <u>S/ Julie A. Robinson</u>  
                                          JULIE A. ROBINSON  
                                          CHIEF UNITED STATES DISTRICT JUDGE